**UNITED STATES of America**

v.

**Jose M. MEDINA, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCCA 200900053.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 16 July 2008.

17 Dec. 2009.

PRICE, J., delivered the opinion of the Court in which GEISER, C.J., VINCENT and MITCHELL, S.JJ., and PERLAK and CARBERRY, JJ., concur. BOOKER, S.J., filed a concurring opinion. MAKSYM, J., filed an opinion concurring in the result. BEAL, J., filed an opinion dissenting as to Part I and concurring as to Parts II and III.

For Appellant: LT Heather L. Cassidy, JAGC, USN; Capt Michael D. Berry, USMC.

For Appellee: LT Duke J. Kim, JAGC, USN; Maj Elizabeth Harvey, USMC.

PRICE, Judge:

A general court-martial with enlisted representation convicted the appellant, contrary to his pleas, of willful dereliction of duty, aggravated sexual assault, and assault consummated by a battery, in violation of Articles 92, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, and 928. The approved sentence was to confinement for 15 months, reduction in pay grade to E–1, total forfeiture of pay and allowances for a period of 18 months, and a bad-conduct discharge.

The appellant raises five assignments of error. First, he alleges that his conviction under Article 120, UCMJ, must be set aside because the statute unconstitutionally required him to disprove an element of the offense before he could raise a defense to the charge. Second, the appellant asserts that the military judge abused his discretion by denying a defense challenge for cause against Colonel (Col) T. Third, the appellant avers that the evidence of the willful dereliction of duty specification was legally and factually insufficient. Fourth, the appellant alleges that the military judge abused his discretion when he failed to suppress the appellant's "involuntary" statement to investigators. Finally, the appellant asserts that the military judge abused his discretion when he failed to suppress evidence of a "pretext telephone call." [1]

We have examined the record of trial and the pleadings of the parties. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Background

The appellant, a staff sergeant (pay grade E–6), and the victim, then a lance corporal (pay grade E–3), met in early July 2007. The appellant and the victim became "friendly acquaintances" over time. Several weeks after their first meeting, the appellant made a sexual advance towards the victim which she rebuffed. Record at 232–33. The victim expressed her disapproval of the incident during a telephone conversation with the appellant later that night. The appellant apologized and indicated that it would not happen again. The victim testified that she took him at his word. Several weeks later, the appellant asked if he could come to the victim's house to watch a movie with her. The victim agreed, only to have the appellant make yet another unwelcome sexual advance. *Id.* at 236–37.

After the second incident, the victim continued to interact with the appellant on non-social matters but made an effort not to be alone with him. On 7 October 2007, the victim hosted a barbeque at her residence. During the course of the event, the victim became extremely inebriated and was taken up to her room by friends. Shortly after being laid out on the bed, at that point fully clothed, the victim "passed out." The victim's friends left the bedroom door open and periodically checked on her.

The appellant arrived later that night. After being informed that the victim was in her room, he entered her bedroom. At some point after the appellant entered the victim's bedroom, several of her friends became concerned for her safety and went upstairs only to find the previously open bedroom door closed and locked. They managed to gain entry and found the appellant sitting on the side of the bed. The victim was passed out on the bed. Her breasts were exposed and her underwear had been put on backwards. When the victim's friends demanded an explanation, the appellant denied any wrongdoing.

The appellant later stated to Naval Criminal Investigative Service (NCIS) investigators that he found the victim asleep on her bed, woke her up and that she hugged and kissed him. He stated that she asked him to close the door and he did so. He acknowledged that when he returned to the bed, the

---

1. The final two assignments of error were raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).

victim was again passed out. He then proceeded to disrobe her, kiss her breasts and neck, and insert his finger into her vagina. The appellant acknowledges that the victim then awoke and pushed his hand away from her vagina. When asked if the victim gave him consent for the touching he initially stated that she had consented but later admitted, "No, she did not. She was passed out." Prosecution Exhibit 1.

The victim testified that she had no recollection of the appellant being in her room before she awoke and pushed his hand away from her vagina.

At trial, the military judge instructed on the defenses of consent and mistake of fact as to consent. Additional background necessary to resolve the assigned errors is included below.

### Part I. Constitutionality of Article 120, UCMJ

The appellant asserts that Article 120, UCMJ, violates his due process rights by requiring him to disprove an element of the offense before he can raise a defense to the charge, and that, the law, as applied in this case, resulted in his being convicted by a quantum of proof that was less than beyond a reasonable doubt. We will first assess the facial challenge, and then review the law, as applied in this case.

As a preliminary matter, we conclude that the military judge was required to instruct the panel on the affirmative defense of consent and mistake of fact as to consent since the "record contains some evidence of the affirmative defense[s] ... to which the military jury may attach credit if it so desires." *United States v. DiPaola*, 67 M.J. 98, 99 (C.A.A.F.2008) (citations and internal quotation marks omitted).

### A. Facial Challenge

■ The appellant contends that his conviction under Article 120(c)(2) must be set aside because the statute requires him to disprove the "substantial incapacity" element of the offense before he can raise the affirmative defense of consent. This burden shift, the appellant contends, violates his constitutional due process rights. We review the constitutionality of statutes *de novo*. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F.2005).

Subsequent to the appellant filing his brief, this court decided *United States v. Crotchett*, 67 M.J. 713 (N.M.Ct.Crim.App.2009), *rev. denied*, 68 M.J. 222 (C.A.A.F.2009). In *Crotchett*, we considered a similar facial challenge to Article 120(c)(2)(C), UCMJ, and determined that the statute does not unconstitutionally shift the burden of proof to an accused to disprove an essential element of the offense that the victim was "substantially incapable of communicating unwillingness to participate in the act," when an accused asserts the affirmative defense of consent. *Id.* at 715–16. We note that *Crotchett* involved a Government appeal under Article 62, UCMJ, 10 U.S.C. § 862, and that at the time of our decision, no specific evidence had been presented. We expressly did not decide whether the statute was unconstitutional as applied.

Following *Crotchett*, we conclude that the elements of Article 120(c)(2) are distinct from the affirmative defenses of consent and mistake of fact as to consent. *Id.* at 713. The Government is not required to prove the putative victim's "lack of consent," but instead, need only prove the victim was "substantially incapacitated." Arts. 120(c)(2), (t)(14)-(16), UCMJ. Similarly, the appellant, in asserting the affirmative defense of consent, is not required to prove capacity.

As a matter of law, the affirmative defense of consent is unavailable where the putative victim is "substantially incapacitated," regardless whether the victim used "words or overt acts indicating a freely given agreement to the sexual conduct at issue by a competent person." Arts. 120(c)(2), (t)(14), UCMJ. However, the statute provides an alternative affirmative defense in such a scenario, mistake of fact as to consent, if the accused reasonably and honestly held, "as a result of ignorance or mistake an incorrect belief that the [putative victim] consented" through words or deeds to the sexual conduct at issue. Art. 120(t)(15), UCMJ.

As Article 120(c)(2), requires no assignment of burdens that would deprive an accused of his right to due process under the

Fifth Amendment, we conclude that the statute is not facially invalid. *Crotchett*, 67 M.J. at 716; *see also United States v. Neal*, 67 M.J. 675, 681–82 (N.M.Ct.Crim.App.2009), *certificate of review filed*, —— M.J. —— (C.A.A.F. 15 May 2009).

## B. As Applied Challenge

The appellant asserts that Article 120(t)(16), as applied through the military judge's instructions, "resulted in [his] being convicted of an offense by a quantum of proof that was less than beyond a reasonable doubt." Appellant's Supplemental Brief of 29 Sep 2009 at 3–8. He argues that in order to instruct that the Government had the burden of disproving consent, "the military judge *must have found*" that the defense had met their burden of proving the affirmative defense of consent by a preponderance of the evidence. *Id.* at 8–9 (emphasis in original). He further argues that it "would be nearly impossible [ ] to articulate specific injury that arose from the denials of his right to due process," therefore the error should be analyzed as structural in nature. *Id.* at 10–11.

### 1. *Instructions on the affirmative defense of consent*

Prior to deliberations on findings, the military judge instructed the members "on the law to be applied in this case." Record at 454. His instructions on the affirmative defense of consent included:

> The evidence has raised the issue of whether [the victim] consented to the sexual acts concerning the offense of aggravated sexual assault. . . .
>
> Consent is a defense to that charged offense. . . .
>
> . . . .
>
> The prosecution has the burden to prove beyond a reasonable doubt that consent did not exist. Therefore, to find the accused guilty of the offense of aggravated sexual assault . . . you must be convinced beyond a reasonable doubt that, at the time of the sexual acts alleged, [the victim] did not consent.

*Id.* at 456–57.

Article 120 allocates burdens, with respect to the affirmative defense of consent, as follows: "The accused has the burden of proving the affirmative defense by a preponderance of the evidence. After the defense meets this burden, the prosecution shall have the burden of proving beyond a reasonable doubt that the affirmative defense did not exist." Art. 120(t)(16), UCMJ.

### 2. *Principles of Law*

"The military judge bears the primary responsibility for ensuring that mandatory instructions . . . are given and given accurately." *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F.2003); *see also* RULE FOR COURTS-MARTIAL 920(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). A military judge's "[f]ailure to provide correct and complete instructions to the panel before deliberations begin may amount to a denial of due process." *United States v. Wolford*, 62 M.J. 418, 419 (C.A.A.F.2006).

"It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Neal*, 67 M.J. at 678 (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)) (citations and internal quotation marks omitted). While courts are required to construe statutes to avoid constitutional questions, this canon does not license a court to usurp the policymaking and legislative functions of duly elected representatives. *Heckler v. Mathews*, 465 U.S. 728, 741–42, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984).

■ Erroneous instruction on an affirmative defense has constitutional implications, and "must be tested for prejudice under the standard of harmless beyond a reasonable doubt." *Wolford*, 62 M.J. at 420 (quoting *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F.2005)). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence." *Id.* (citations and internal quotation marks omitted).

### 3. *Analysis*

#### a. *Appellant's Argument*

The appellant's argument that "the military judge *must have found* that [he] had already satisfied his burden of proving that [the victim] consented by a preponderance of the evidence" rests on the premise that the military judge faithfully tracked through the statutory decision process for proving affirmative defenses outlined in Article 120. Appellant's Supplemental Brief at 8 (emphasis in original). However, this does not appear to have been the case.

The record contains no evidence that the military judge made any interlocutory determination with respect to the statutory requirement that the appellant prove the existence of the affirmative defense of consent by a preponderance of the evidence. On the contrary, it appears that the military judge instructed the members on the affirmative defense of consent because the record included some evidence of consent, as he was required to do.

We also reject the appellant's argument that, to the extent the military judge erred in instructing the members on the defense of consent, such error constitutes a structural defect and requires mandatory reversal. *See Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *see also United States v. Meek,* 44 M.J. 1, 6 (C.A.A.F.1996)(discussing *per se* reversal rule).[2] Erroneous instruction on an affirmative defense has constitutional implications, and "must be tested for prejudice under the standard of harmless beyond a reasonable doubt." *Wolford,* 62 M.J. at 420 (citation omitted).

We conclude, therefore, that the appellant's argument has no merit.

#### b. *Issue on Appeal*

■ The military judge's instructions on the affirmative defense of consent departed from the plain language of the statute by omitting the initial allocation of burdens prescribed by statute—the appellant's burden of proving the affirmative defense of consent by a preponderance of the evidence. Art. 120(t)(16), UCMJ. The military judge's instructions also misstated the second allocation of burdens.[3]

Given these instructions, the issue on appeal is whether the military judge's instructions omitting the appellant's statutorily prescribed burden constitutes an error that may amount to a denial of due process, or a legitimate exercise of judicial discretion. *See Wolford,* 62 M.J. at 419; R.C.M. 920(e)(3).

Clearly, the military judge's instructions omitted the appellant's burden of proving the affirmative defense of consent by a preponderance of the evidence. Although the record provides no insight into his rationale for instructing the members in this manner, the instruction provided does mirror the Military Judges' Benchbook's recommended members instruction on the affirmative defense of consent. Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 (15 Sep 2002), Approved Interim Update "Article 120", 3-45-5 "Aggravated Sexual Assault," Note 9. It is also notable that the appellant's burden, omitted by the military judge, was a central component of the recent, substantial revision of Article 120. *Neal,* 67 M.J. at 678-80.

Under the circumstances present here however, we need not determine whether these instructions constituted error, or a le-

---

**2.** *See generally Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)("an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair"); *Yates v. Evatt,* 500 U.S. 391, 402, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) (constitutionally erroneous instruction shifting the burden of proof subject to harmless-error review); *Pope v. Illinois,* 481 U.S. 497, 504, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (harmless-error analysis appropriate, even though trial court improperly instructed the jury on an element of an obscenity charge); *Rose v. Clark,* 478

U.S. 570, 576, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)(harmless-error inquiry appropriate where jury incorrectly instructed on the element of malice in a murder trial).

**3.** Though not raised or essential to resolution of this appeal, the military judge also deviated from the plain language of the statute by placing the burden on the Government to prove beyond a reasonable doubt that the putative victim "did not consent" vice "that the affirmative defense [of consent] did not exist." *Id.* at 456-57.

gitimate exercise of judicial discretion, as the instructions, in either event, inured to the appellant's benefit.

With respect to potential prejudice, the appellant has not articulated any prejudice attributable to these instructions, and we find none. The military judge's instruction to consider the defense of consent effectively relieved the appellant of his statutorily mandated burden to prove the affirmative defense of consent, by a preponderance of the evidence, and advanced the members consideration along the statutorily prescribed scheme. In addition, the military judge's instruction effectively burdened the prosecution with proving, beyond a reasonable doubt, that the victim did not consent to the sexual activity.

Notwithstanding the aforementioned benefits to the appellant, the members concluded, beyond a reasonable doubt, that the victim was incapacitated at the time of the incident and that she did not consent to the sexual activity. They similarly concluded either that the appellant did not mistake the victim's words or actions for consent or that if he did make such a mistake, the mistake was not objectively reasonable.

Even assuming the military judge's instructions on the affirmative defense of consent constitute error, those instructions not only failed to prejudice the appellant, but actually inured to his benefit by alleviating him of any burden of production or proof with respect to the affirmative defense of consent.

Moreover, the evidence of guilt in this case was overwhelming. The appellant admitted committing the sexual conduct in issue to the victim, to a mutual friend, and to the NCIS, prompting the civilian defense counsel to concede "[t]here probably is no question that the evidence [shows that the appellant] engaged in sexual acts." Record at 446. With respect to whether the victim was substantially incapacitated, the remaining element, the victim's testimony, as corroborated by her friends and the appellant's admissions to her, to a mutual friend, and to the NCIS, establishes that she was substantially incapacitated at the time of that sexual conduct.

Accordingly, we are convinced beyond a reasonable doubt that the instructions "did not contribute to the [appellant's] conviction or sentence." *Wolford*, 62 M.J. at 420; *see also DiPaola*, 67 M.J. at 102–03.

### Part II. Challenge for Cause

The appellant contends that the military judge abused his discretion by denying the defense's challenge for cause of Col T and that his presence on the panel raises the issue of implied bias. At trial, citing R.C.M. 912(f)(1)(N), the defense challenged Col T. Record at 175–76. Following the military judge's denial of that challenge, the defense did not exercise a peremptory challenge on any member. *Id.* at 188.

■ Failure to exercise a peremptory challenge against any member constitute[s] waiver of further review of an earlier challenge for cause, therefore, this issue is without merit. *See* R.C.M. 912(f)(4); *United States v. Leonard*, 63 M.J. 398, 403 (C.A.A.F. 2006).

### Part III. Dereliction of Duty—Legal and Factual Sufficiency

■ The appellant asserts that the Government's evidence was legally and factually insufficient to establish that he was willfully derelict in his duties by engaging in a relationship with the victim. His argument is two-fold: (1) that the Government failed to establish the existence and nature of a Marine Corps custom that gave rise to the duty, and (2) even assuming such a duty exists, that his conduct was not prejudicial to good order and discipline or service discrediting. This Court reviews evidence for both legal and factual sufficiency. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987). The tests are well-known.

"A duty may be imposed by treaty, statute, regulation, lawful order, standard operating procedure or custom of the service." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), Part IV, ¶ 16c(3)(a). "A person is derelict in the performance of duties when that person willfully [or intentionally] fails to perform [their] duties. . . ." *Id.* at ¶ 16c(3)(c).

At trial, Sergeant Major (SgtMaj)H, USMC, testified as an expert witness about

Marine Corps customs concerning interaction between noncommissioned officers and subordinates, and the Government introduced two regulations precluding relationships between enlisted personnel that are unduly familiar and do not respect differences in grade or rank. Record at 277–90; PEs 4, 5.

SgtMaj H testified that the customs of the Marine Corps and the aforementioned regulations preclude a staff noncommissioned officer from being on a first-name basis with an E–3, attending private gatherings, requesting and accepting a personal loan, kissing or inappropriately touching, or pursuing a sexual encounter with subordinates. According to SgtMaj H, these duties exist even if the subordinate and the noncommissioned officer are not in the same chain of command.

In this case, the appellant knew that the victim was an E–3 before meeting her. Record at 382. With knowledge of her rank, he initiated or participated in each of the aforementioned acts over a three-month period.

Considering the evidence adduced at trial in the light most favorable to the Government, we find that a reasonable trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner*, 25 M.J. at 325. In addition, after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, this court is convinced of the appellant's guilt beyond a reasonable doubt. *Id.; see also* Art. 66(c), UCMJ.

We find the appellant's fourth and fifth assignments of error to be without merit. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A.1987).

**Conclusion**

The findings and approved sentence are affirmed.

Chief Judge GEISER, Senior Judges VINCENT and MITCHELL, and Judges PERLAK and CARBERRY concur.

BOOKER, Senior Judge (concurring):

I concur with the majority that the findings and sentence are correct in law and in fact and that no error materially prejudicial to the appellant's substantial rights occurred. I write separately to emphasize my understanding of the statutory scheme and the role of the military judge in carrying out the effect of the statute.

It was proper for the military judge to instruct on the affirmative defense of consent because the record contains some evidence which the members could credit with respect to the defense. *See* RULE FOR COURTS-MARTIAL 920(e)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.). That is all that it takes to earn the instruction. *See* R.C.M. 920, Discussion; *see generally United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F.2002).[1] While Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920, is not a model of clarity, I believe that the problem in its construction is one purely of mechanics, and this belief is underscored by the quoted language from the majority's opinion and by the rhetorical questions posed by Judge Maksym in his concurrence.[2]

I believe that the military judge's instructions to the members, Record at 456–57, were erroneous and confusing. They were erroneous because they essentially added an

---

1. The military judge, sitting as a judge and not as a finder of fact, need not, perhaps must not, determine the credibility of the evidence nor the amount of the evidence when deciding whether to give the instruction. It is up to the finder of fact to determine credibility and weight issues as with any other disputed issue.

2. In response to Judge Maksym's rhetorical question of how the Government can be expected to rejoinder by legal and competent evidence beyond any reasonable doubt the proof by the defense of the affirmative defense of consent already established by a preponderance of all known evidence, I make two comments. First, the Government and defense are proving two different things: on the part of the defense, it is that the victim consented; on the part of the Government, it is that the affirmative defense does not exist. Second, I expect that, because of our robust discovery practice, the parties will be conversant with both their own evidence and their opponent's evidence before trial. In such a case, it should be a simple matter to direct witness examination in such a way as to establish elements beyond a reasonable doubt (or cast a cloud over such evidence); set out an affirmative defense; and then disprove the existence of the defense beyond a reasonable doubt, all during the course of the parties' cases in chief.

element—lack of consent—that is not part of the statutory scheme. *See United States v. Crotchett*, 67 M.J. 713, 715 nn. 3 & 4 (N.M.Ct.Crim.App.2009)(noting that lack of consent has been removed as an element in most Article 120 prosecutions). They were confusing because they appear to require both proof of consent or mistake of fact as to consent by some unspecified level of evidence and then proof beyond a reasonable doubt that consent or mistake of fact as to consent did not exist. I concur with the majority that these erroneous instructions were harmless beyond a reasonable doubt given the overwhelming evidence of guilt, and further that any error in adding an element for the Government to prove beyond a reasonable doubt must have inured to the appellant's benefit.

The military judge's instructions to the members, and the pattern instruction in the Military Judges' Benchbook,[3] both erroneously require the Government to prove that *consent* did not exist in order to overcome the affirmative defense of "consent" or "mistake of fact as to consent". In fact, the statute requires that the Government prove, beyond a reasonable doubt, that the *affirmative defense* did not exist. This is a distinction with a difference. To put it in its simplest terms, I believe that the defenses require a showing of *apparent* consent, while the Government's burden in the face of such a showing is to prove lack of *lawful* consent. *See Crotchett*, 67 M.J. at 715.

The instructional challenge is daunting but not insurmountable. I respectfully offer the following for the consideration of the Trial Judiciary and other appellate courts as a means for instructing on consent as an affirmative defense. With some adaptations, it can also be used to instruct on mistake of fact as to consent:

The evidence has raised a question of whether [victim] consented to the sexual conduct at issue.

Consent is an affirmative defense to the allegation in the Specification of the Charge. The defense must prove consent by a preponderance of the evidence.

"Consent" means words or overt acts indicating a freely given agreement to the sexual conduct at issue by a competent person.

In determining whether the accused has demonstrated consent by a preponderance of the evidence, you are further advised that the following do not constitute consent:

An expressed lack of consent through words or actions.

Submission resulting from the accused's use of force; threat of use of force; or placing another person in fear.

Lack of physical or verbal resistance resulting from the accused's use of force; threat of use of force; or placing another person in fear.

A current or previous dating relationship, by itself, between the person involved in the sexual conduct and the accused.

The manner of dress of the person involved in the sexual conduct.

If the defense establishes by a preponderance of the evidence that the person involved in the sexual conduct consented, then unless the Government proves beyond a reasonable doubt that the affirmative defense does not exist, you must find the accused not guilty.

The Government will succeed in proving that the affirmative defense does not exist if it proves beyond a reasonable doubt that the consent was not freely given or that it was given by an incompetent person. More specifically, the Government must prove, beyond a reasonable doubt, that the person engaged in the sexual conduct could not consent because that person:

1. Was under the age of 16;

2. Was substantially incapable of appraising the nature of the sexual conduct at issue due to mental impairment or unconsciousness resulting from consumption of alcohol, drugs, a similar substance, or otherwise; or

3. Was substantially incapable of appraising the nature of the sexual conduct

---

**3.** Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9 (15 Sep 2002), Approved Interim Update "Article 120", 3–45–5 "Aggravated Sexual Assault," Note 9.

at issue due to mental disease or defect that renders the person unable to understand the nature of the sexual conduct at issue;

4. Was substantially incapable of physically declining participation in the sexual conduct at issue; or

5. Was substantially incapable of physically communicating unwillingness to engage in the sexual conduct at issue.

This instruction could properly, and might ideally, be given after the elements of the charged offense, and certainly would have to be tailored to the facts offered to the members. Constructing the charge to the members in this fashion gives the statute the effect Congress intended—shift the focus from the victim to the accused—and at the same time preserves the accused member's presumption of innocence by requiring the Government to prove all elements beyond a reasonable doubt and, when raised, to disprove the existence of an affirmative defense beyond a reasonable doubt.

I do join the majority's conclusion that none of the victim's words or actions constituted, in the minds of the members, consent. I join the majority's conclusion that the appellant's mistaken belief as to consent, if in fact he held such a belief, was not reasonable in the eyes of the members. I am independently satisfied of the correctness in law and fact of all the findings of guilt and of the sentence. I therefore join in affirming the findings and the approved sentence.

MAKSYM, Judge (concurring in the result):

While I concur with the majority's ultimate holding in this matter, I am compelled to write separately so as to set forth my view that the trial judge did not err by applying the Benchbook[1] instruction on the issue of consent in an obvious effort to salvage this poorly written, confusing and arguably absurdly structured and articulated act of Congress. Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920.

Here, the trial judge confronted a statute which has confounded the military justice community since its adoption and used a legitimate weapon placed at his disposal, the Military Judges' Benchbook. Unlike the vague and undefined verbiage of the statute, the Benchbook instruction affords judicial clarity to an opaque legislative landscape. The military judge had the option of either deploying the Benchbook instruction, or setting the entire statute aside—a judicial act taken by other military judges but rejected by this court in previous challenges of this troubled statute. *See United States v. Crotchett*, 67 M.J. 713 (N.M.Ct.Crim.App. 2009); *United States v. Neal*, 67 M.J. 675 (N.M.Ct.Crim.App.2009).

By adopting the Benchbook instruction, the trial judge made obvious his recognition that there are unanswerable questions imbedded in the core of this troubled statute. Of paramount interest, how can the Government be expected to rejoinder by legal and competent evidence beyond any reasonable doubt the proof by the defense of the affirmative defense of consent already established by a preponderance of all known evidence? Art. 120(t)(16), UCMJ Also, where in the statute does Congress advise as to whether or not the military judge should make an interlocutory ruling on the affirmative defense of consent? Or does Congress intend for the members to make this determination and, if so, under what methodology should the members discharge this duty? Certainly, this court can develop speculative answers to these questions but in doing so we betray the statute's inability to pass the first test of legislative interpretation—dependence upon the clear language of the statute. The only thing clear about this statute is that it is hopelessly incomplete and confusing. In delivering the Benchbook instruction, the military judge acted well-within the penumbra of his judicial authority and this court should not question the absence of a particularized explanation in the face of such clear action. The default position of this Court should be that a judge is presumed to know the law and properly apply it. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F.2007);

---

1. Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9 (15 Sep 2002), Approved Interim Update "Article 120", 3–45–5 "Aggravated Sexual Assault," Note 9.

*United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F.2004); *United States v. Mason*, 45 M.J. 483 (C.A.A.F.1997).

A military judge has the absolute authority to interpret a federal statute that appears on it's face to be absurd under the judicial theory that it imposes upon the accused an omnipresent constitutional danger. *See Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (citation and internal quotation marks omitted); *see also United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F.2007). Here, rather than deploy the more radical judicial weapon, by which a statute is declared unconstitutional, the court below simply and justifiably applied a saving instruction to cure a statute that calls for the Government to rejoinder evidence of consent beyond any reasonable doubt after the defense has proven its existence by a preponderance of all known evidence. Art. 120(t)(16), UCMJ. The efficacious use of judicial authority by the trial judge in this case is commendable.

BEAL, Judge (dissenting in part and concurring in part):

Notwithstanding this court's recent precedent,[1] I respectfully dissent from the majority's handling of the facial and as-applied challenge to the aggravated sexual assault charge; as to the remaining assigned errors, I concur. I cannot in good conscience affirm a conviction of aggravated sexual assault under Article 120(c)(2), Uniform Code of Military Justice, 10 U.S.C. § 920(c)(2), because I am convinced that the statutory scheme of Article 120, in regard to that particular offense, is facially unconstitutional under the Due Process Clause of the Fifth Amendment. Under the express mandates of the statute, the affirmative defense of actual consent plainly burdens the accused with negating the second element of the offense, i.e. the alleged victim was substantially incapacitated.[2] Based on the facts of this record, I would affirm a conviction for the lesser included offense of wrongful sexual contact under Article 120(m) which avoids this constitutional infirmity. I would reassess and affirm the approved sentence.

This Court first addressed the constitutionality of Article 120 in *United States v. Neal*, 67 M.J. 675 (N.M.Ct.Crim.App.2009), *certificate of review filed*, —— M.J. —— (C.A.A.F. 15 May 2009), in which the court unanimously upheld the constitutionality of the offense of aggravated sexual contact as set forth under Article 120(e), UCMJ. In its ruling, the court addressed whether or not lack of consent was an implied element of the offense.[3] *Id.* at 678. In resolving that question, the court determined that lack of consent was not an explicit element of an alleged violation of Article 120(e), UCMJ, and concluded that force and consent were distinct terms that were potentially related, but not inextricably so. *Id.* at 679. In *United States v. Crotchett*, 67 M.J. 713 (N.M.Ct.Crim.App. 2009), *rev. denied*, 68 M.J. 222 (C.A.A.F. 2009), this court relied on the rationale expressed in *Neal* when it first addressed whether or not aggravated sexual assault, as set forth under Article 120(c), was facially unconstitutional. The court found "the elements of [aggravated sexual assault under Article 120(c), UCMJ,] do not require the Government to prove a lack of consent." *Id.* at 715 (footnote omitted). In its analysis, the

1. *United States v. Neal*, 67 M.J. 675 (N.M.Ct. Crim.App.2009), certificate of review filed, —— M.J. —— (C.A.A.F. 15 May 2009); *United States v. Crotchett*, 67 M.J. 713 (N.M.Ct.Crim.App. 2009), *rev. denied*, 68 M.J. 222 (C.A.A.F.2009); and *United States v. Fairley*, No. 200800762, unpublished order (N.M.Ct.Crim.App. 13 May 2009), were decided before I joined the Court. As a matter of full disclosure, I was the military judge reversed by this court in *Crotchett* and *Fairley*.

2. I also agree to some extent with the points raised by Judge Maksym's concurring opinion regarding the myriad flaws resulting from some of the statute's unclear language. However, I believe these issues are of secondary importance to the fundamental due process issue which I believe is dispositive in the review of this case.

3. Specifically, the court framed the question as follows: "To prove 'force,' must the Government prove lack of consent?" *Id.* at 678.

court acknowledged "an apparent overlap of defense and Government burdens in prosecutions for aggravated sexual contact (sic)" but ultimately characterized this overlap as "only apparent, not actual," *Id.* Ultimately, the court concluded "[a] facial challenge to Article 120(c)(2)(c) fails because ... the statute ... does not mandate a shift to the defense of the burden of proof as to any element." *Id.* at 716.

As a threshold matter, I note a significant difference between the offenses at issue in *Neal* on one hand, and *Crotchett, Fairley* and the instant case on the other. The analysis in *Neal* centered on the second element of the offense of aggravated sexual contact, *i.e.,* that contact was made with another by using *force.* In *Crotchett, Fairley,* and the case currently before us, the analysis centers on the second element of aggravated sexual assault, i.e. the alleged victim was substantially *incapacitated.*[4] In the context of the statute, "force" addresses the actions taken by the accused to compel submission of the alleged victim, Art. 120(t)(5), whereas "incapacity," addresses the physical or mental ability of the alleged victim to give his or her competent consent, Art. 120(t)(14). Given the significant differences between the two types of offenses, the rationale in support of this court's decision in *Neal* should be given little, if any, consideration in the court's decision in either *Crotchett, Fairley,* or the case at bar.

As another threshold matter, I am aware, as the court noted in *Crotchett,* that "facial challenges are disfavored" and prevail only when "no combination of facts and circumstances ... can ever exist that would allow a constitutional interpretation" of a statute. 67 M.J. at 714 (citation omitted). Furthermore, I am mindful there is a strong presumption that congressional acts are constitutionally valid and that invalidation of a congressional enactment is warranted "only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). However, "statutes should be interpreted to give meaning to each word," "courts must presume that a legislature says in a statute what it means and means in a statute what it says there," and "criminal statutes are to be strictly construed, and any ambiguity resolved in favor of the accused." *United States v. Adcock,* 65 M.J. 18, 24 (C.A.A.F.2007) (citations omitted); *United States v. Tanner,* 63 M.J. 445, 449 (C.A.A.F.2006)(Baker, J., concurring) (citations omitted); *see also United States v. Thomas,* 65 M.J. 132, 135 n. 2 (C.A.A.F.2007) (citations omitted). Based upon a comprehensive reading of Article 120 in its entirety, I am convinced that the logical application of all of the statutory mandates contained within the article would result in the aforementioned due process violation regardless of any specific fact pattern. Accordingly, for the reasons stated herein, I find that the defense has successfully mounted a facial challenge to the statute. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

**I.** *The Fifth Amendment Due Process Clause Limits Congress' Authority to Define Federal Crimes*

A fundamental principle in Anglo–American jurisprudence is the notion that an accused is presumed innocent until the Government proves beyond a reasonable doubt all the facts necessary to establish his or her guilt. Wayne R. LaFave, et al., Criminal Law 48 (2d ed.Supp.1996). This principle is constitutionally based in the Fifth Amendment's Due Process Clause. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). While it is well-within a legislature's authority to define the elements of a crime, a statute that attempts to ease the Government's burden by allowing the presumption of a fact necessary to constitute an offense violates a defendant's right to due process. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In *Mullaney,* the Supreme Court reversed the defendant's conviction for felonious homicide under a state statutory scheme that allowed the presumption of an element (malice aforethought) if the state proved there was an intentional and unlawful killing. *Id.* The state required the defendant to prove he

---

4. In *Crotchett* the second element was a variation on substantial incapacity, *i.e.,* "the other person was substantially incapable of declining participation."

acted in the heat of passion on sudden provocation to prove he was guilty of the lesser offense of manslaughter. *Id.* at 688, 95 S.Ct. 1881. In defending the statute, the state argued "the absence of the heat of passion on sudden provocation was not a 'fact necessary to constitute the crime' of felonious homicide.'" *Id.* at 697, 95 S.Ct. 1881 (quoting *Winship*, 397 U.S. at 364, 90 S.Ct. 1068)(emphasis omitted). The Supreme Court disagreed and held that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the element that differentiated the greater offense from the lesser offense (felonious homicide from manslaughter). *Id.* at 704, 95 S.Ct. 1881. The case at bar is similar to *Mullaney* in that Article 120(c) allocates to an accused a burden of proof of a significant fact—whether the sexual act was consensual; a fact which is dispositive over guilt or innocence. Under the statutory scheme of Article 120, the second element of aggravated sexual assault (substantial incapacitation) implies a fact (lack of consent) which, if disproved by the accused, *negates* the fact establishing the criminality of the sexual act, rather than *excusing* or *justifying* it. Some might argue that the Government need not prove "lack of consent" because it is not an explicit element of the offense. But just as the state in *Mullaney* argued it need not prove the defendant acted with the "absence of heat of passion upon sudden provocation," the correct response to this argument is what our Supreme Court said, that due process "is concerned with substance rather than this kind of formalism." *Id.* at 699, 95 S.Ct. 1881 (footnote omitted).

It is well-established that a legislature is within its authority to define affirmative defenses to crimes in which the defendant may be assigned the burden of proof—so long as the affirmative defense does not require the accused to disprove the elements of the crime. *Patterson v. New York*, 432 U.S. 197, 207, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Patterson*, the state statute established second degree murder as a two element offense: (1) the intent to cause another's death, and (2) causing the death. *Id.* at 198, 97 S.Ct. 2319. The statute also established an affirmative defense in which the defendant was

burdened with proving that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." *Id.* (footnote and internal quotation marks omitted). The Supreme Court affirmed the conviction reasoning: "The death, the intent to kill, and causation are the facts that the State is required to prove beyond a reasonable doubt if a person is to be convicted of murder. *No further facts are either presumed of inferred in order to constitute the crime.*" *Id.* at 205–06, 97 S.Ct. 2319 (emphasis added). As to the affirmative defense, the Court noted that it was a "separate issue" which did not "serve to negative any facts of the crime which the State is to prove in order to convict." *Id.* at 207, 97 S.Ct. 2319. In its holding the Court was clear to caution

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.... Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

*Id.* at 215, 97 S.Ct. 2319.

The case at bar is a perfect example of what the Supreme Court warned against in *Patterson;* Article 120 shifts to the accused the burden of disproving a fact (lack of consent) which is presumed by the other elements of the offense (substantial incapacity). An alleged victim's substantial incapacity is a predicate fact from which a fact-finder may reasonably presume a lack of consent. *United States v. Mathai*, 34 M.J. 33, 36 (C.M.A. 1992). By the terms of the statute, a finding that there was consent is incompatible with a finding that the alleged victim was substantially incapacitated. Art 120(t)(14). Rather than requiring the Government to prove lack of consent beyond a reasonable doubt as an element of the offense, Congress burdened the accused to prove consent, a task which plainly requires the accused to negate the second element.

In cases where the elements of an offense and an affirmative defense "overlap in the sense that evidence to prove the latter will often tend to negate the former," no due process violation occurs so long as the defense is not required to disprove an element of the prosecution's case. *Martin v. Ohio,* 480 U.S. 228, 234, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). The Court's handling of *Martin* delicately balanced the authority of the legislature to statutorily define affirmative defenses against the protections of individual due process rights as mandated in *Winship.* The Court struck this balance by recognizing there is no due process violation when an affirmative defense only *partially* eclipses one of the elements of the offense, but where the affirmative defense *fully* eclipses an element of an offense, there lies a due process violation. During oral argument in the case at bar, the Government conceded that the affirmative defense of consent overlapped with the second element of the offense, but relied on *Martin* for the proposition that the coexistence of those facts did not offend due process. Likewise, this court recognized in *Crotchett* "an apparent overlap between defense and Government burdens in prosecutions for aggravated sexual [assault]." 67

M.J. at 715. However, both *Crotchett* and the case at bar are significantly distinguishable from *Martin,* because the affirmative defense established under Article 120 goes beyond the protective reach of *Martin;* it *fully eclipses* the second element of the offense, i.e. someone who is capable of giving consent cannot be substantially incapacitated.

## II. *"Consent" Under Article 120 Cannot be an Affirmative Defense to Aggravated Sexual Assault because it Negates the Element of Incapacity*

Under Article 120(c)(2), there are two explicitly stated elements that constitute an aggravated sexual assault: 1) the accused engaged in a sexual act [5] with another person who is of any age; and, 2) the other person was substantially incapacitated.[6] Of course, under Article 120(r), if the accused engaged in a sexual act with the other person's consent, then no offense was committed.[7] Specifically, the statute provides: "Consent ... [is] not an issue ... except [it is] an affirmative defense for the sexual conduct in issue in a prosecution under subsection ... (c)(aggravated sexual assault)...." Art. 120(r), UCMJ.[8]

5. *"Sexual act ... means—*
   (A) contact between the penis and the vulva, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; or
   (B) the penetration, however slight, of the genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, or degrade any person or to arouse or gratify the sexual desire of any person." Art. 120(t)(1), UCMJ.

6. Or of a certain physical or mental state that precludes competence, *i.e.,* the other person was substantially incapable of appraising the nature of the sexual act; the other person was substantially incapable of declining participation in the sexual act; or the other person was substantially incapable of communicating unwillingness to engage in the sexual act. *See* Art. 120(c)(2)(c).

7. Article 120(r) establishes two separate affirmative defenses to aggravated sexual assault: 1) actual consent, and 2) mistake of fact as to consent. I believe the latter is a viable affirmative defense because an accused's reasonable mistake that the alleged victim consented to the sexual act is an additional fact which excuses what would otherwise be criminal behavior. Consequently, the mistake of fact as to consent defense does not raise the constitutional issues

raised by the defense of *actual* consent, which negates the second element of the offense. Unlike the majority, I believe that the existence of the mistake of fact defense is inconsequential when assessing the constitutional viability of the actual consent defense.

8. In its handling of *Martin,* the Supreme Court explicitly cautioned against the practice of instructing fact-finders to not consider evidence of an affirmative defense when determining whether there was reasonable doubt about the Government's case, because "such an instruction would relieve the State of its burden and plainly run afoul of *Winship's* mandate." *See Martin,* 480 U.S. at 234, 107 S.Ct. 1098 (citation omitted). By providing in Article 120(r) that "[c]onsent ... [is] not an issue ... except [it is] an affirmative defense," Congress did exactly what the Court said not to do. In *Neal,* this court purported to employ the avoidance doctrine in an effort to give Article 120(r) constitutional viability, but I fear their noteworthy efforts to save the statute led them to disregard the plain meaning of the statute which they chose to interpret as merely " 'highlighting Congress' removal of 'lack of consent' as an element that must be proven by the Government." 67 M.J. at 681. I believe the interpretation of the statute expressed in *Neal* is absurd, because the statute already makes quite

An affirmative defense is an additional fact or set of facts that does not necessarily deny the veracity of the alleged elements of an offense, but when considered in addition to the elements, either excuses, justifies, or mitigates that which would otherwise be criminal behavior. LaFave, Criminal Law 51. The statute itself actually defines the term as follows: "The term 'affirmative defense' means any special defense that, although not denying that the accused committed the objective acts constituting the offense charged, denies, wholly, or partially, criminal responsibility for those acts." Art. 120(t)(16).

Accordingly, if actual consent is truly an affirmative defense, then it must be a fact that is able to co-exist with the facts that constitute the elements of the crime. A careful and comprehensive reading of Article 120 however, leads to the conclusion that actual consent cannot serve as an affirmative defense to the offense of aggravated sexual assault. Consent is statutorily defined as "words or overt acts indicating a freely given agreement to the sexual conduct at issue by a *competent* person." Art. 120(t)(14)(emphasis added). The inclusion of the word "competent" in the statutory definition of consent is critical to this analysis, because as the statute notes further: "A person *cannot consent* to sexual activity if . . . substantially incapable of . . . appraising the nature of the sexual conduct . . . [or] physically declining participation in the sexual conduct . . . or physically communicating unwillingness to engage in the sexual conduct at issue." *Id.* (emphasis added).

By the terms of the statute itself, substantial incapacity forecloses any possibility that the alleged victim consented to the sexual act. When a reader of Article 120 reads the statute with the understanding that "consent" actually means consent by a *competent* person, the line (if any), that delineates the second element (incapacity) from the "affirmative defense" (legal consent given by a competent person) becomes indecipherably blurred. The only conclusion is that "substantial incapacity" implies the fact that actually makes the sexual act at issue a criminal

clear through the various definitions of offenses

offense, *i.e.*, it was done without the alleged victim's consent.

The majority opinion recognizes that actual consent and the mistake of fact as to consent are two affirmative defenses to aggravated sexual assault, but the opinion tends to conflate the existence of the two separate defenses in such a manner that attempts to avoid the unconstitutional burden shift attendant to the actual consent defense.

> As a matter of law, the affirmative defense of consent is unavailable where the putative victim is 'substantially incapacitated.' . . . However, the statute provides an alternative affirmative defense in such a scenario, mistake of fact as to consent . . .

*Majority Opinion* at 4. Respectfully, I find this approach flawed in two ways. First, it presumes as fact that the alleged victim was actually substantially incapacitated, thus making the defense of actual consent "unavailable." As both concurring opinions note, the statute is vague as to whether the availability of the *actual consent* defense is an interlocutory matter for the judge, or an ultimate question of fact to be determined by the fact finder. Nonetheless, as the statute clearly states, the accused is burdened with establishing the affirmative defense by the preponderance of the evidence. To state that the defense is "unavailable" as a matter of law is to presume the alleged victim is actually "substantially incapacitated," a finding that only can be made after all evidence is in and the fact-finder has finished deliberating on findings.

Second, the majority opinion relies on the separate defense of "mistake of fact as to consent" as a constitutional back-stop for the actual consent defense. The majority's application of Article 120(r) in this manner runs the risk, in certain cases, of relying on fiction in order to serve justice. In those rare situations where an alleged victim *did* consent to the sexual act in question, but falsely claimed substantial incapacity, should the accused defend himself under the falsity that he *mistook* her consent, or should he rely on the fact that the alleged victim was a willing

that consent is not an explicit element.

participant to the liaison?[9] Perhaps the former approach is the most efficacious application of this fundamentally flawed statute, but I am of the mind that the latter is the more intellectually honest approach and requires the Government to prove, during it's case-in-chief, that the accused engaged in a sexual act with another person *without that person's consent.*

Furthermore, the Manual for Courts–Martial itself validates the notion that "lack of consent" is an implicit element to aggravated sexual assault, because it recognizes wrongful sexual contact as a potential lesser included offense. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.) Part IV, ¶ 45e(3). As our superior court noted last term, a lesser included offense embraces all of the elements of the greater offense. *United States v. Medina,* 66 M.J. 21, 24 (C.A.A.F. 2008). Accordingly, the statutory scheme of Article 120, read as a whole, plainly makes "lack of consent" an essential fact necessary to establish an accused's guilt and thus, assignment of any burden upon the accused to prove consent violates Due Process under the Fifth Amendment.

### III. *Any Judicial Instructions Given to Avoid the Constitutional Infirmities of Article 120 Usurps Congress' Authority to Legislate*

Courts are required to effectuate affirmative defenses as Congress may have contemplated. *Dixon v. United States,* 548 U.S. 1, 12, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006). In *Dixon* the Court affirmed the appellant's conviction over her challenge that the trial court improperly instructed the jury regarding a duress defense to a federal criminal statute. The Court reasoned that because neither the statute's structure nor history indicated that Congress actually considered how an affirmative defense would work within the context of the statute, the Court was free to effectuate a duress defense to a federal criminal statute in such a manner that harmonized the statute with the appellant's rights to due process. *Id.* at 14, 126 S.Ct. 2437. Accordingly, if Congress was silent on the issue on how to effectuate the affirmative defense of consent under 10 U.S.C. § 920(r), then federal courts would be free to effectuate the affirmative defense as Congress "may have contemplated" it. However, the converse is true in the case of Article 120; Congress specifically established actual consent as an affirmative defense to aggravated sexual assault and specifically set forth the requirement that the accused prove consent by a preponderance of the evidence. As the majority acknowledges, courts must not pervert the purpose of a statute nor rewrite it in its efforts to construe it constitutionally. By simply giving the Benchbook's proposed instruction each time the issue is reasonably raised by the evidence, a court disregards a significant portion of the statute and embarks upon judicial legislation.

### IV. *Conclusion*

Prior to its 2007 revision, Article 120 set forth only two types of sexual offenses: rape and carnal knowledge. The second element of rape under Article 120 was "that the intercourse was done by force and without consent". MCM (2005 ed.), Part IV, ¶ 45(b)(1). The second and third elements of carnal knowledge established that the intercourse was done with a person who lacked the legal capacity to consent due to age. *Id.,* Part IV, ¶ 45(b)(2). The common factor of both these offenses was that intercourse was done without the other person's legal consent. The notion that consent, or the lack thereof, has long been recognized by sociological and legal experts as the central issue at stake regarding sexual assault. Major Jennifer S. Knies, *Two Steps Forward, One Step Back: Why the New UCMJ's Rape Law Missed the Mark, and How an Affirmative Consent Statute Will Put It Back on Target,* ARMY LAW, August 2007 at 1–19.

Under the revised Article 120, Congress has attempted to define a variety of sexual offenses by explicitly omitting the language "without consent" from any element and substituting "substantial incapacity" or some other factual predicate from which a factfinder might reasonably presume the accused

---

9. Even if the false reporting rate of sexual assault is as low as 6–7%, as some studies suggest, the liberty interests of those 6–7 innocent men out of 100 are reason enough to rigorously adhere to the mandates of *Winship.*

engaged in some sort of sexual behavior without the alleged victim's consent. *See* Art. 120(a)-(n). In the case of sexual batteries as set forth under Article 120(a), (c), (e), and (h), Congress has determined that actual consent is an affirmative defense, *i.e.*, a separate fact that either excuses or justifies the conduct embraced by the underlying elements of the offense. Perhaps this statutory scheme satisfies due process concerns as to rape, aggravated sexual contact, and abusive sexual contact—but as to aggravated sexual assault, as set forth under Article 120(c), I find that the treatment of consent as an affirmative defense has resulted in a semantic shell game that results in the presumption of guilt and requires the accused to prove his innocence. This is precisely the scenario that our Supreme Court warned of in *Mullaney*, "[A] State could undermine many of the interests [*Winship*] sought to protect without effecting any substantive change in its law." 421 U.S. at 699, 95 S.Ct. 1881.

Finally, the revisions to Article 120, especially Article 120(c)(2), pose dire consequences to military readiness. Sadly, the factual situation contemplated by Article 120(c)(2) is arguably the most common scenario in which our service members are sexually violated. In an effort to give the statute any sort of constitutional vitality, many trial judges have widely adopted the Benchbook's proposed instruction, just as the trial judge in this case did, which I consider a radically unauthorized and major deviation from the law passed by Congress and signed by the President. The ironic tragedy of such recourse is, as the Government argued during oral argument, application of the statute in such a manner actually makes prosecution of these sorts of sexual offenses more difficult.

"The purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States." MCM (2008 ed.), Part I, ¶ 3. I fear that since its effective date, each day that courts continue to countenance this horribly flawed statute as constitutionally viable, the more frustrated each of the above-stated purposes of military law becomes. Moreover, I believe all of our service members, especially the accused and the alleged victims, as well as those men and women responsible for maintaining good order and discipline within the ranks, deserve a statute that clearly and fairly addresses such an important matter in military life.