UNITED STATES, Appellee,

v.

David M. MATHAI, Sergeant
U.S. Army, Appellant.

No. 66,259.
CM 9000230.

U.S. Court of Military Appeals.

Argued Oct. 2, 1991.

Decided Jan. 27, 1992.

For Appellant: Captain Michael Huber
(argued); Colonel Robert B. Kirby, Major
Michael J. Kelleher, Captain Timothy P.
Riley, Captain Cynthia J. Rapp (on brief);
Lieutenant Colonel Russell S. Estey and
Captain Pamela J. Dominisse.

For Appellee: Captain Timothy W. Lucas
(argued); Colonel Alfred F. Arquilla and
Lieutenant Colonel Daniel J. Dell'Orto (on
brief); Captain Kenneth H. Goetzke, Jr.

*Opinion of the Court*

COX, Judge:

Appellant was tried at Goeppingen, Fed-
eral Republic of Germany, before a general
court-martial which included enlisted mem-
bers. Contrary to his pleas, he was con-
victed of rape, adultery, and kidnapping, in
violation of Articles 120 and 134, Uniform
Code of Military Justice, 10 USC §§ 920
and 934, respectively. He was sentenced
to a bad-conduct discharge, 5 years' con-
finement, and total forfeitures. The con-
vening authority approved this sentence.

The Court of Military Review set aside
and dismissed the adultery charge in an
unpublished opinion. Citing *United States
v. Hickson*, 22 MJ 146 (CMA 1986), the
court found that the adultery arose out of
the same act of sexual intercourse as the
rape. Since the military judge held the two
offenses multiplicious for sentencing, how-
ever, the court held that no prejudice was
suffered by appellant at sentencing. Ap-
pellant petitioned this Court, and we grant-
ed review of the following issues:

I

WHETHER THE EVIDENCE IS SUFFI-
CIENT AS A MATTER OF LAW TO
SUPPORT THE FINDING OF GUILTY
OF RAPE (CHARGE II).

II

WHETHER THE EVIDENCE IS SUFFI-
CIENT AS A MATTER OF LAW TO
SUPPORT THE FINDING OF GUILTY
OF KIDNAPPING (CHARGE III, SPEC-
IFICATION 2).

The evidence shows that on October 21, 1989, the victim, Private S, drank "three or four beers" at a barbeque and became "fairly intoxicated." After the barbeque, a group of people, including Private S, went barhopping. Along the way, she drank approximately four "boilermakers." The record indicates that Private S had recently arrived in Germany and was not accustomed to the higher content of alcohol found in German brews.

In a drunken state, Private S returned to her barracks accompanied by Sergeant Asplund. Once there, she walked to the female section of the barracks and was approached by appellant, who stated, "Follow me, Private." He led Private S downstairs to the "C & E room," which he identified as his office, and he unlocked the door.

Private S entered the room at his direction, and appellant closed and latched the door. At this point, appellant kissed Private S. She returned the kiss at first, but then "pushed him away" stating, "Bullshit, you don't even know me." Private S then headed towards the door. Appellant grabbed Private S and kissed her again. She attempted to leave several times, but each time appellant grabbed her. He continued trying to kiss her, and he pulled her pants down. Private S then noticed she was menstruating and said: "See, look, we can't do this anyway." She "pulled up" her pants. Appellant then pulled down his pants and placed Private S's hand "on his penis." He pushed her to the floor, and she passed out. She remembered regaining consciousness and realiz-

ing that appellant "was penetrating" her, but she could not move and passed out again. She next remembered waking up in the hallway after apparently having been unconscious for some time.

Around one o'clock in the morning, Private S was fumbling with the lock on her barracks door when she awakened her roommate, Private Westfall, who opened the door and let her in. A short time later, Westfall heard Private S in the bathroom crying. On being questioned, Private S told Westfall "that she thought she had been raped." Westfall reported the incident to Sergeant Smith. Appellant, after observing Westfall and Smith conversing, asked Smith what they had talked about and stated, "I didn't force her to do anything."

I

*Rape*

■ To prove rape, the Government must show beyond a reasonable doubt:

(a) That the accused committed an act of sexual intercourse with a certain female;

(b) That the female was not the accused's wife; and,

(c) That the act of sexual intercourse was done by force and without her consent.

Para. 45b(1), Part IV, Manual for Courts-Martial, United States, 1984. Appellant claims that the Government failed to prove beyond a reasonable doubt element (c)— "by force and without her consent." On sufficiency-of-the-evidence questions, this Court draws reasonable inferences from the record in favor of the prosecution. *United States v. Blocker*, 32 MJ 281, 284 (CMA 1991), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ The question of Private S's consent or lack thereof is partially clouded by her inability to recall some of the events. Indeed, her testimony admits of some uncertainty as to whether she may have consent-

ed or sent appellant "the wrong signals."[1] The question for us to resolve is whether the evidence presented *at trial* was sufficient for a reasonable factfinder to find all the essential elements beyond a reasonable doubt. *United States v. Turner*, 25 MJ 324 (CMA 1987), *citing Jackson v. Virginia, supra.*

Appellant argues that an inference can be drawn that Private S did, in fact, consent. While such an inference might be drawn, so might the contrary inference, *i.e.*, that she did not consent.[2] A reading of Private S's trial testimony reveals that her uncertainty as to consent extended only to those moments when she was unconscious. She clearly stated: "Yes, I guess I expressed a doubt because—well, with not remembering part of it, being passed out, how can you be positively sure about anything if you don't remember it, Ma'am." The military judge attempted to clarify Private S's statement:

Q. Private ... [S], let me ask you one thing. You said that while you were passed out you might have consented. What do you mean by that?

A. I am just saying that, since I don't remember, I can't honestly say, one way or the other, Sir. I mean, I can't—if I don't remember.

Therefore, the question of consent must be limited to those moments where Private S was unconscious or cannot remember.

There is abundant evidence of Private S's resistance while she was conscious. As accurately summarized by Government appellate counsel, there is testimony that she

manifested her lack of consent no less than a dozen times prior to intercourse: (1) She pushed him away; (2) She said, "Bullshit, you don't even know me"; (3) She headed for the door; (4) She pushed him away again; (5) She said, "No way. You are married"; (6) She said, "Don't do this to me"; (7) She tried to leave again; (8) She noticed her menstrual period had begun and said, "See, look, we can't do this anyway"; (9) She pulled up and fastened her pants after appellant had pulled them down; (10) She tried to leave yet again; (11) When appellant forced her hand onto his penis, she pulled her hand away and (12) She pulled back and fell backwards when appellant tried to force her to perform fellatio.

(Citation omitted.) These methods of resistance were sufficient to prevent sexual intercourse until Private S lost consciousness.

We note that, ordinarily, "more than the incidental force involved in penetration is required for conviction" of rape. *United States v. Bonano–Torres*, 31 MJ 175, 179 (CMA 1990). However, the Manual for Courts–Martial explains:

---

1. At trial, on cross-examination, Private S responded in this manner to defense questioning:

Q. Is it safe to say that you don't remember whether you consented or not?
A. While I was consciously awake, I don't—I didn't consent, but at the time I don't remember, I can't say what I did or didn't do, when I don't remember.
Q. So there was a large part of that evening you just don't remember?
A. Yes, Sir.
Q. So then, you think it is quite possible you could have consented?
A. Well, if I was, in fact, blacked out, instead of completely passed out, it is possible.

Similarly, a post-trial statement, signed by Private S and submitted in conjunction with appellant's "Request for Clemency," contains the following recitation:

4. It is very possible that I blacked out when I was with SGT Mathai. I know that I do not

remember some of the things I did earlier that night at the bars I went to....

\* \* \* \* \* \*

6. It is very possible that I consented to sexual intercourse with SGT Mathai but just do not remember consenting. Also, because of some of the things that I said to him and did, such as kissing him back, I really feel that it was possible that he believed I consented.
7. Since the court-martial, I have felt very bad because the more I think about it the more I think maybe I did consent or at least did things that indicated that I was willing....

2. At trial, appellant also contended that the victim's conduct caused him to be reasonably mistaken as to her consent. *See United States v. Baran*, 22 MJ 265 (CMA 1986); *United States v. Carr*, 18 MJ 297 (CMA 1984). The military judge properly instructed on this theory, but the factfinders obviously rejected the claim.

If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent. *Consent, however, may not be inferred* if resistance would have been futile, where resistance is overcome by threats of death or great bodily harm, or *where the female is unable to resist because of the lack of mental or physical faculties.* In such a case there is no consent and the force involved in penetration will suffice. All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm. If there is actual consent, although obtained by fraud, the act is not rape, but *if to the accused's knowledge the woman is of unsound mind or unconscious to an extent rendering her incapable of giving consent, the act is rape.*

Para. 45c(1)(b) (emphasis added).

There is sufficient evidence in this record for the trier of fact to find that Private S was unconscious, that she could not consent to sexual intercourse, and that appellant reasonably knew or should have known that she had not so consented. Moreover, her testimony as to appellant's reactions to her rebuffs indicates that force was used. Finally, since the evidence shows that she did not consent to sexual intercourse with appellant while she was conscious, there can be no implied consent by reason of her inability to reject appellant's advances while unconscious.[3] We conclude that the evidence is sufficient to sustain the rape conviction.

---

**3.** Though we can detect no substantial difference between Private S's trial testimony and the statement submitted by the defense along with the clemency petition, *see* n. 1, and though she is hardly a "newly discovered" source, our decision today is without prejudice to appellant's filing a petition for new trial under Article 73,

## II
### *Kidnapping*

■ Appellant next argues that the evidence is not sufficient as a matter of law to support the findings of guilty of kidnapping. To support a charge of kidnapping, the Government must show beyond a reasonable doubt:

(1) That the accused seized, confined, inveigled, decoyed, or carried away a certain person;

(2) That the accused then held such a person against that person's will;

(3) That the accused did so willfully and wrongfully; and

(4) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 92b, Part IV, Manual, *supra.* At trial, the Government proceeded on an inveiglement theory. To " 'inveigle' means to lure, lead astray, or entice by false representations or other deceitful means." Para. 92c(1). To be guilty of kidnapping, appellant must have willfully and wrongfully inveigled Private S. Para. 92c(4) and (5); *see United States v. Blocker,* 32 MJ at 284 (kidnapping requires act "be knowingly and willfully done").

In *United States v. Blocker, supra,* we found inveiglement where the accused told his victim that he was turning off the main road in order to urinate. The accused drove his car to a spot in dense woods well beyond that necessary for a private urination and, after urinating, returned to the car and immediately raped the victim three times. The Court held that the accused's representation of his purpose was so incomplete or false as to be deceitful. Similarly, in *United States v. Hooks,* 24 MJ 713 (1987), *pet. denied,* 26 MJ 39 (1988), the

---

Uniform Code of Military Justice, 10 USC § 873, and RCM 1210, Manual for Courts–Martial, United States, 1984. *See generally United States v. Giambra,* 33 MJ 331 (CMA 1991) (accused petitioned for new trial after alleged victim recanted testimony).

Army Court of Military Review found inveiglement where the accused lied about where he lived because he intended to hold the victim against her will and rape her.

In the present case, no evidence exists that appellant expressly lied to Private S in order to get her into his office. Appellant merely stated, "Follow me, Private." Private S testified that she thought she was wanted for some military purpose as appellant was the Charge of Quarters (CQ) on duty that night. Appellant admitted that his purpose was to engage in sex with Private S; however, he asserts that his intent *at that time* was to engage in consensual sex.

The Court of Military Review found sufficient evidence of a guilty intent to affirm the conviction for kidnapping. Unpub.op. (Nov. 28, 1990). Drawing reasonable inferences in favor of the prosecution, we also must determine whether the evidence presented at trial is sufficient to prove intent beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[C]ircumstantial evidence of ... intent will suffice." *United States v. Blocker*, 32 MJ at 285. There is evidence that Private S was drunk and was new to the post. Appellant was the CQ on duty on the night in question. While dressed in fatigues, appellant stated to Private S, "Follow me, Private." Appellant admitted that he intended to have sex with Private S. On this basis, a rational

factfinder could have found beyond a reasonable doubt that appellant intended to lure Private S to his basement office by means of an official order and hold her against her will. *See generally United States v. Blocker, supra.* Furthermore, it is the implied use of the power of his "office" which provides the necessary deception to establish "inveiglement." *See generally United States v. Hicks*, 24 MJ 3 (CMA) (use of status sufficient to supply element of force), *cert. denied*, 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987). Even if appellant did not intend to commit rape at that time, by his own admission he intended to have wrongful sexual intercourse because he was a married man.

██ Appellant must have also held Private S against her will in order to be convicted. As noted in the discussion on consent, *supra*, appellant several times grabbed Private S and prevented her from leaving the room. Thus, sufficient evidence existed for a reasonable factfinder to find the other elements of kidnapping beyond a reasonable doubt.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN concurs.

Judges CRAWFORD, GIERKE, and WISS, and Senior Judge EVERETT did not participate.