# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, EWING,[1] and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant ISAC D. MENDOZA**
**United States Army, Appellant**

ARMY 20210647

Headquarters, 1st Infantry Division and Fort Riley
Steven C. Henricks and Ryan W. Rosauer, Military Judges
Colonel Toby N. Curto, Staff Judge Advocate

For Appellant: Major Julia M. McCormick, JA (argued); Colonel Philip M. Staten, JA; Jonathan F. Potter, Esquire; Major Bryan A. Osterhage, JA (on brief).

For Appellee: Captain Anthony J. Scarpati, JA (argued); Colonel Richard E. Gorini, JA; Major Lisa Lim, JA; Captain Anthony J. Scarpati, JA (on brief).

For Amicus Curiae Supporting Appellant: Brian A. Pristera, Esquire; Scott R. Hockenberry, Esquire.

27 June 2025

------------------------------------------------------
MEMORANDUM OPINION ON REMAND
------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

EWING, Judge:

Appellant's case is back at our court following remand from the Court of Appeals for the Armed Forces [CAAF]. In our first opinion, we rejected appellant's factual sufficiency claim and affirmed his conviction for sexual assault without consent. *United States v. Mendoza*, ARMY 20210647, 2023 CCA LEXIS 198 (Army Ct. Crim. App. 8 May 2023) (mem. op.) (*"Mendoza I"*). The CAAF has ordered us to revisit our sufficiency analysis consistent with its later opinion. *United States v.*

---

[1] Judge EWING decided this case while on active duty.

*Mendoza,* __ M.J. __, 2024 CAAF LEXIS 590, at \*3-4 (C.A.A.F. 7 Oct. 2024) (*"Mendoza (CAAF)"*). We follow our superior court's instructions here and again find that the government's evidence was sufficient to convict appellant for the charged offense, and not some other offense. We therefore again affirm.[2]

## BACKGROUND

Both our court and the CAAF have set out the relevant facts in prior opinions and we do not repeat every jot and tittle, other than as necessary herein. *See Mendoza,* 2023 CCA LEXIS 198, at \*2-5; *Mendoza,* __ M.J.__, 2024 CAAF LEXIS 590, at \* 1-7; \*56-59 (Maggs, J., concurring in part and dissenting in part). As in a strikingly high percentage of sexual assault cases this court sees, alcohol played a prominent role.

The five prior opinions in this case (our court's majority and dissent plus the CAAF's three total opinions) all addressed, on some level, the interplay between evidence of the victim's intoxication and appellant's charge of conviction—that is, committing a sexual act upon the victim *without her consent.* Uniform Code of Military Justice art. 120(b)(2)(A), 10 U.S.C. § 920 (2018) [UCMJ] ("without consent" statute). Looming nearby, both factually and in the text, is an offense the government *did not* charge, namely committing a sexual act on a victim who is incapable of consenting due to, as relevant here, intoxication. UCMJ art. 120(b)(3)(A) ("incapable" statute). The CAAF has held that these two statutes create "separate theories of criminal liability," and that charging one and proving the other "raises significant due process concerns." *Mendoza,* 2024 CAAF LEXIS 590, at \*3. The CAAF instructed us to further elucidate "how or why the evidence of [the victim's] intoxication factored into" our sufficiency analysis. *Id.*

Alongside this potential due process issue, the CAAF provided the following guidance on how to properly consider intoxication evidence in the "without consent" sufficiency context:

> In our view, the ACCA's opinion presents an open question whether it improperly considered the evidence of JW's intoxication as proof of JW's inability to consent and therefore proof of the absence of consent. To be clear, our holding—that subsection (b)(2)(A) and subsection (b)(3)(A) create separate theories of liability—*does not*

---

[2] Contrary to his plea, a military judge found appellant guilty of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ]. Appellant was sentenced to a dishonorable discharge, thirty months of confinement, and reduction to the grade of E-1.

> *bar the trier of fact from considering evidence of the victim's intoxication when determining whether the victim consented.* See Article 120(g)(7)(C), UCMJ ("All the surrounding circumstances are to be considered in determining whether a person gave consent."). Nothing in the article bars the Government from offering evidence of an alleged victim's intoxication to prove the absence of consent. Conversely, nothing bars the defense from offering the same evidence to sow reasonable doubt. But what the Government cannot do is prove the absence of consent under Article 120(b)(2)(A), UCMJ, by merely establishing that the victim was too intoxicated to consent.

*Mendoza*, 2024 CAAF LEXIS 590, at *22 (emphasis added). Mapped onto this framework, we again find appellant's conviction legally and factually sufficient.[3]

## ANALYSIS

First, the framework. We addressed a highly similar situation in 2022 in *United States v. Roe*, ARMY 20200144, 2022 CCA LEXIS 248 (Army Ct. Crim. App. 27 Apr. 2022) (mem. op.). Like here, the government charged and convicted Roe on a "without consent" theory and did not charge the incapacitation statute. *Id.* at *8. Like here, the victim was highly intoxicated and did not remember the sexual act. *Id.* at *2-7. Like here, Roe claimed that the government's evidence of the victim's intoxication raised both due process and sufficiency concerns. *Id.* at *10-23.

In addressing Roe's due process claim, we held that the government could attempt to carry its burden of proving sexual assault without consent "by presenting, mainly but alongside other evidence, the fact of the extreme intoxication at the time of the sexual act." *Id.* at *11. Thus, in that context, Roe was convicted of the offense "as charged, and not some other uncharged offense[,]" thus mooting any due process concerns. *Id.* Our sister appellate courts have reached the same conclusion on similar facts. *Id.* at *17 (citing *United States v. Williams*, No. ACM 39746, 2021 CCA LEXIS 109 (A.F. Ct. Crim. App. 12 Mar. 2021)). *See also United States v. Gomez*, No. 201600331, 2018 CCA LEXIS 167, at *10-13 (N.M. Ct. Crim. App. 4 Apr. 2018) (same); *United States v. Flores*, 82 M.J. 737, 744 (C.G. Ct. Crim. App. 2022) (same analysis in sufficiency context). We likewise rejected Roe's

---

[3] In our court, appellant only challenged the factual sufficiency of his conviction and not its legal sufficiency. The CAAF then agreed to hear appellant's case on a legal sufficiency claim. Because the CAAF has instructed us to revisit both factual and legal sufficiency, we do so here.

3

sufficiency claim based on the combination of the victim's high level of intoxication and several other factors, including what we viewed as Roe's false exculpatory statement. *Roe,* 2022 CCA LEXIS at *21. The CAAF denied Roe's petition for review of our opinion. *United States v. Roe,* 83 M.J. 83 (C.A.A.F. 2022). Our court later reaffirmed this approach en banc in *United States v. Coe,* 84 M.J. 537, 541-42 (Army. Ct. Crim. App. 2024) (en banc) (citing, *inter alia, Roe*).[4]

Does the *Roe* framework for considering intoxication evidence survive the CAAF's decision in this case? We think yes. At oral argument in our court following remand in this case, counsel for both sides represented that the *Roe* "mainly but alongside other evidence" formulation remained good law after *Mendoza (CAAF).* Moreover, the CAAF formally sanctioned the consideration of a victim's level of intoxication "to prove the absence of consent." *Mendoza,* 2024 CAAF LEXIS 590, at *22. That is what we did in *Roe* and *Coe,* and that is our approach here as well.[5]

Second, sufficiency. When we apply the CAAF's directive here, we again find the government's evidence sufficient. Like *Roe* and *Coe,* this case included *both* evidence of the victim's intoxication *and* other evidence of non-consent. While we recognize that our superior court held that it is insufficient to prove "without consent" by "merely" showing an incapacity to consent, *Mendoza,* 2024 CAAF LEXIS 590, at *22, we find as a factual matter that is not what happened here. Non-alcohol evidence that the victim did not consent included: (1) the fact that she had no prior relationship with appellant; (2) that she testified that she would have never consented to sex while menstruating and (3) would not have pushed a tampon so far inside herself; (4) the fact that she locked herself in appellant's bathroom after the assault; (5) her immediate and shrill outcry at the CQ desk the next morning; and (6) appellant's initial false exculpatory statements and evolving stories, first denying that any sex occurred (later contradicted by DNA) which we may and do consider as substantive evidence of appellant's guilt. *See United States v. Quezada,* 82 M.J. 54, 59 (C.A.A.F. 2021) ("[A] false exculpatory statement also may provide relevant circumstantial evidence, namely, evidence of a consciousness of guilt."). Moreover, while not completely divorced from the intoxication question, we also note

---

[4] We note that *Coe* is also in a remand status at our court following the CAAF's decision in this case.

[5] Of note, during oral argument, government appellate counsel conceded that this case should be remanded to the trial court while simultaneously arguing the evidence was legally and factually sufficient. We do not interpret CAAF's remand order to authorize remand to the trial court, and we are neither required nor inclined to accept this concession. *See United States v. Hand,* 11 M.J. 321 (C.M.A. 1981); *United States v. Emmons,* 31 M.J. 108, 110 (C.M.A. 1990).

appellant's warning to another soldier to not engage with the victim due to her level of intoxication shows knowledge of her weakened state and a potential intent to target her himself. Finally, of course, appellant arguably confessed at least to having sex with the victim while she was extremely intoxicated.

In light of these "surrounding circumstances," we view the victim's high level of intoxication as circumstantial evidence of a lack of consent, alongside the other evidence in the case. *Mendoza*, 2024 CAAF LEXIS 590, at *22. We further find that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (legal sufficiency) and we are also convinced of appellant's guilt beyond a reasonable doubt. *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (factual sufficiency standard applicable here).

## CONCLUSION

On further review and consideration of the entire record, the finding of guilty to Specification 1 of The Charge and the sentence are AFFIRMED.

Chief Judge POND and Judge JUETTEN concur.

Judge EWING, concurring:

While not necessary to resolve this appeal, I write separately to encourage fresh consideration of the interplay between incapacity and consent in the appropriate case. Respectfully, the law in its current state is sowing confusion in the field. The statute contains a simple fix.

Statutory interpretation starts with the black letter. Where a statute's text is "plain and unambiguous," courts "must apply the statute according to its terms." *Cacieri v. Salazar*, 555 U.S. 379, 387 (2009). Absent a "clear indication that they bear some technical or specialized sense, the words and phrases used in written legal instruments 'are to be understood in the ordinary, everyday meanings.'" *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1226 (11th Cir. 2024) (quoting Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012)). Where the words of a statute are unambiguous, "judicial inquiry is complete." *Babb v. Wilkie*, 589 U.S. 399, 413 (2020). *See also, e.g., United States v. Valentin-Andino*, __M.J. __, 2025 CAAF LEXIS 248, at *9-10 (C.A.A.F. 2025) (same) (citing *Connecticut Nat'l Bank v. Germain*, 502 U.S. 249, 253-54 (1992)).

The statute at issue here prohibits committing a sexual act *without* another's consent. UCMJ art. 120(b)(2)(A).

"Without" is unambiguous. It means "the absence or lack of something or someone." *Merriam Webster Dictionary*, 2025 (https://www.merriam-webster.com/dictionary/without) (last visited June 26, 2025). *See Valentin-Andino*, __ M.J.__, 2025 CAAF LEXIS 248, at *6-9 (explaining that "[w]hen a common word or phrase in a statute lacks a unique legal meaning, a court may consult a lay dictionary in the course of defining it," and citing to a dictionary for the definitions of "meaningful" and "appropriate"). A person who commits a sexual act on a person who is asleep, unconscious, or otherwise unaware of the act does so with "the absence or lack of" that person's consent to the act. In other words, having sex with someone who is legally incapable of consenting is also doing the act *without* that person's legal consent.

This concept was uncontroversial not so long ago. Before 2007, Article 120, Rape and Carnal Knowledge, had the following two elements:

> (1) That the accused committed an act of sexual intercourse; and
>
> (2) That the act of sexual intercourse was done by force and *without consent.*

UCMJ art. 120(b)(1)(a-b), 10 U.S.C. § 920 (2005) (emphasis added).

The law at that time further provided the following as to the interplay between consent and incapacity:

> Consent . . . may not be inferred . . . where the victim is unable to resist because of the lack of mental or physical faculties. In such a case *there is no consent* and the force involved in penetration will suffice.

*Manual for Courts-Martial, United States* (2005 ed.) [*MCM*], pt. IV, ¶ 45c.(b) (emphasis added).

Cases abound from the pre-2007 era affirming "without consent" convictions based on incapacitation. *See, e.g., United States v. Mathai,* 34 M.J. 33, 36 (C.M.A. 1992) (sufficient evidence for Article 120 conviction where the trier of fact could find that the victim "was unconscious, that she could not consent to sexual intercourse, and that appellant reasonably knew or should have known that she had not so consented"); *United States v. Valentin-Nieves,* 57 M.J. 691, 696 (N.M. Ct. Crim. App. 2002) (finding sufficient evidence where "victim's incapacity was due to her extreme intoxication"); *United States v. Roberts*, 55 M.J. 724, 732 (N.M. Ct. Crim. App. 2001) (sufficient evidence where victim "lacked the ability to consent due to her state of intoxication").

6

Congress added substantial detail to Article 120 in 2007. The new statute both removed "without consent" from the offense's elements and included an early version of the menu of options present in the current Article 120. This had the effect of transforming the concept of consent into a confusing and, ultimately, unworkable affirmative defense. *See* Major Howard H. Hoege III, *"Overshift," The Unconstitutional Double Burden-Shift on Affirmative Defenses in the New Article 120*, 2007 ARMY LAW. 2 (May 2007) (discussing this change and the practical and constitutional concerns it spawned); *accord United States v. Prather*, 69 M.J. 338, 342-45 (C.A.A.F. 2011) (holding that the removal of consent as an element in Article 120 resulted in an unconstitutional burden shift onto the defendant). Following these constitutional problems, Congress returned the term "without consent" to Article 120's elements for sexual assault in the Military Justice Act of 2016. Military Justice Act of 2016, Pub. L. 114-328, 130 Stat. 2000; 10 U.S.C. § 920(b)(2)(A) (2019). In so doing, Congress retained a version of the menu of other options for charging sex offenses they first wrote into the statute in 2007. *Id.* Following further statutory changes, a version of this menu persists today as does the "without consent" variant.

With this history as backdrop, my view is that "without consent" should carry the same plain meaning now that it did before 2007. *Mathai*, 34 M.J. at 36 ("without consent" satisfied where victim unconscious). *See also, e.g., Clark v. Suarez Martinez*, 543 U.S. 372, 382 (2005) (rejecting mode of statutory interpretation "which would render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case"). Stated differently, the fact that Article 120 now contains other charging options does not change the plain meaning of "without consent," but rather is evidence that Congress was trying to use both belt and suspenders in this area of the law, as it is entitled to do. *Cf., e.g., Snyder v. United States*, 603 U.S. 1, 27 (2024) ("Congress commonly writes federal statutes . . . in such a belt and suspenders manner").

Would returning to the plain meaning of "without consent" cause overlap between Article 120's various subsections? Yes. Is that a problem? No.

Preliminarily, the overlap may not be complete. Think of the couple who uses drugs together to the point of passing out, and purports to "pre-consent" to sex. Even assuming *arguendo* the efficacy of such pre-consent, sex with a passed-out person would still be prohibited under the current scheme. Similarly, it is possible to simultaneously be both legally incapable of consenting and to manifest non-consent, such as in the case of a minor who legally cannot consent and also manifests non-consent. But Venn diagrams and hypotheticals to one side, the Supreme Court has explained that overlap between criminal statutes—even *complete* overlap—does not violate due process. *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) (holding, in relation to two firearms statutes that completely

7

overlapped but had different sentencing schemes, that "[s]o long as overlapping criminal provisions clearly define conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied," and noting that the Court had "long recognized" that where an act violates more than one criminal statue, the government may prosecute "under either"). *See also, e.g., United States v. Phillips*, 73 M.J. 572, 573 (Army Ct. Crim. App. 2014) ("This Court may not prescribe which [charge] the government should charge when there is a legal and factual basis for both.").

Nor is there any evidence that Congress intended to occupy the field with the incapacity offenses and thus foreclose the government from charging such cases as "without consent" offenses. In the absence of any express intent for one statute to preempt another, courts disfavor such findings, which run counter to the normal rule of prosecutorial discretion. *See, e.g., Posadas v. National City Bank*, 296 U.S. 497, 503 (1936) ("The cardinal rule is that repeals by implication are not favored"); *United States v. Morton*, 69 M.J. 12, 16 (C.A.A.F. 2010) ("It is the Government's responsibility to determine what offense to bring against an accused."). Moreover, as to the two statutes here, there is no "positive repugnancy" between "without consent" and incapacity, for the same reasons the pre-2007 cases expressed. *Batchelder*, 442 U.S. at 121-22; *see also United States v. Heng*, No. ARMY 20210404, 2022 CCA LEXIS 377, at *8 (Army Ct. Crim. App. 2022) (Mem. Op) (citing *Batchelder* for this proposition in a different context). The Code defines "consent" as a "freely given agreement to the conduct at issue by a competent person." UCMJ art. 120(g)(7)(A). But this defines the ability *to* consent. Nothing in this definition creates an additional requirement for the government to first show competency before establishing that the defendant did an act *without consent*.

Finally, the fact that the incapacitation offenses have the additional mens rea element requiring a showing that the defendant knew or reasonably should have known of the victim's incapacity does nothing to the validity of the separate and free-standing "without consent" statute. This is particularly true where defendants who raise mistake-of-fact as to consent by some evidence are entitled to that panel instruction in "without consent" cases. *See, e.g., United States v. Davis*, 76 M.J. 224, 228 (C.A.A.F. 2017) (defendants entitled to mistake of fact instruction where "the record contains some evidence of an honest and reasonable mistake" as to consent).

With the utmost respect for our superior court, in this context, its addition of the express requirement that the government show a *capacity to consent* in order to charge the "without consent" version of Article 120, *Mendoza* 2024 CAAF LEXIS 590, at *3, is more than just an atextual addition to the statute; it runs directly counter to the statute's plain text. A return to the plain language would provide both fealty to the statute and clarity to the field.

I respectfully concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court